UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| JODI MARIE COOK,<br><br>    Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL,<br><br>    Defendant. | Case No. 17-cv-00004-RMI<br><br>**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**<br>Re: Dkt. Nos. 19, 26 |

Plaintiff, Jodie Marie Cook, seeks judicial review of an administrative law judge ("ALJ") decision denying her application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Plaintiff's request for review of the ALJ's unfavorable decision was denied by the Appeals Council. The ALJ's decision is therefore the "final decision" of the Commissioner of Social Security, which this court may review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Both parties have consented to the jurisdiction of a magistrate judge (Docs. 5 & 7), and both parties have moved for summary judgment (Docs. 19 & 26). For the reasons stated below, the court will grant Plaintiff's motion for summary judgment, and will deny Defendant's motion for summary judgment.

**LEGAL STANDARDS**

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## PROCEDURAL HISTORY

In February and June of 2013, Plaintiff filed applications for benefits under Titles II and XVI, alleging an onset date of July 1, 2012. (*See* Doc. 19 at 2; Doc. 26 at 2). The ALJ denied the applications on June 3, 2015 (Doc. 14, Administrative Record "AR" at 61), and the Appeals Council denied Plaintiff's request for review on November 4, 2016 (AR at 2-7).

## SUMMARY OF THE RELEVANT EVIDENCE

Plaintiff alleges that she suffers from the following impairments: vertigo, fibromyalgia, anxiety disorder (with agoraphobia), depressive disorder, temporomandibular joint ("TMJ") syndrome, neck pain, glandular swelling in her neck, fatigue, myalgia, and myositis. (Doc. 19 at 3). The ALJ determined that Plaintiff's fibromyalgia, anxiety disorder (with agoraphobia), and her depressive disorder were all severe. (AR at 48-49).

*Plaintiff's Identification of Vertigo as an Impairment:*

Plaintiff's pre-hearing brief (dated January 12, 2015) identified and listed a diagnostic history of her various impairments, while also making specific references to associated medical records. (*See generally* AR at 344-46). In her pre-hearing brief, Plaintiff specifically noted that her history of dizziness had been diagnosed as vertigo in July of 2011, and that she had sought treatment again for it in November of 2014. (*Id.*).

*Medical Evidence of Vertigo:*

In July of 2011, Plaintiff was treated for vertigo by her primary care physicians at the Fortuna Family Medical Group ("FFMG"). (AR at 367-68). Plaintiff sought treatment on this occasion due to the reemergence of episodes of dizziness, which were lasting as long as 30

minutes, which had a history dating back to a 1997 vertigo diagnosis, and which were now causing her "to feel as though the floor was wavy or uneven." (AR at 367). The treating physician's assessment was benign positional vertigo. (*Id.*). Throughout 2012, Plaintiff was still complaining of dizziness, for which her treating physician contemplated a neurology referral. (AR at 364, 371). Three months later, Plaintiff was treated again at FFMG for episodes of dizziness, "causing a spinning sensation," and lasting as long as 30 minutes; this time, her treating physician's diagnosis was central origin vertigo. (AR at 362).

During the course of 2013, Plaintiff was treated for a popping sensation in her ears (AR at 353), and for her recurrent episodes of dizziness and vertigo (AR at 454). The following year, in November of 2014, Plaintiff was again treated for her dizziness and vertigo (AR at 477-78). In April of 2015, Plaintiff was yet again treated for vertigo by her primary care physicians, reporting that her symptoms during this episode had been constant and acute for several days, rather than lasting only up to 30 minutes per episode. (AR at 528-29). On this occasion, the treating physician's progress notes reflected a diagnosis of either peripheral or central origin vertigo, as well as a planned referral to a specialist. (*Id.*).

**THE FIVE STEP SEQUENTIAL ANALYSIS FOR DETERMINING DISABILITY**

A person filing a claim for social security disability benefits ("the claimant") must show that she has the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or is expected to last for twelve or more months. *See* 20 C.F.R. §§ 416.920(a)(4)(ii), 416.909.[1] The ALJ must consider all evidence in the claimant's case record to determine disability (*see id.* § 416.920(a)(3)), and must use a five-step sequential evaluation process to determine whether the claimant is disabled (*see id.* § 416.920). "[T]he ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).

Here, the ALJ evaluated Plaintiff's application for benefits under the required five-step

---

[1] The regulations for supplemental security income (Title XVI) and disability insurance benefits (Title II) are virtually identical though found in different sections of the CFR. For the sake of convenience, the court will only cite to the SSI regulations herein unless noted otherwise.

3

sequential evaluation. (*See* AR at 47-60).

At Step One, the claimant bears the burden of showing she has not been engaged in "substantial gainful activity" since the alleged date the claimant became disabled. *See* 20 C.F.R. § 416.920(b). If the claimant has worked and the work is found to be substantial gainful activity, the claimant will be found not disabled. *See id*. The ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (AR at 48).

At Step Two, the claimant bears the burden of showing that she has a medically severe impairment or combination of impairments. *See* 20 C.F.R. § 416.920(a)(4)(ii), (c). "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting S.S.R. No. 96–3(p) (1996)). The ALJ found that Plaintiff suffered from the following severe impairments: fibromyalgia, anxiety disorder with agoraphobia, and depressive disorder. (AR at 48-49). The ALJ also found that Plaintiff suffered the following medically determinable, but non-severe, impairments: borderline personality disorder, and headaches. (AR at 49). Finally, the ALJ found that Plaintiff's alleged connective tissue disorder had not been medically determined. (*Id*.).

At Step Three, the ALJ compares the claimant's impairments to the impairments listed in appendix 1 to subpart P of part 404. *See* 20 C.F.R. § 416.920(a)(4)(iii), (d). The claimant bears the burden of showing her impairments meet or equal an impairment in the listing. *Id*. If the claimant is successful, a disability is presumed and benefits are awarded. *Id*. If the claimant is unsuccessful, the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to Step Four. *See id*. § 416.920(a)(4)(iv), (e). Here, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. (AR at 49-51). Next, the ALJ determined that Plaintiff retained the RFC "to perform medium work" with several physical and environmental limitations. (AR at 51-58).

At Step Four, the ALJ determined that Plaintiff is unable to perform her past relevant work as a children's attendant. (AR at 58).

At Step Five, the ALJ concluded that based on the testimony of the VE, and the ALJ's

4

formulation of the RFC, that Plaintiff was capable of making a successful adjustment to work that existed in significant numbers in the national economy; and thus, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, from July 1, 2012, through the date of the decision. (AR at 58-60).

**ISSUESS PRESENTED**

Plaintiff presents three issues for review. The first assigns error to the ALJ's analysis and evaluation of Plaintiff's fibromyalgia at Step Three and beyond. Plaintiff's second issue assigns error to the ALJ's formulation of the RFC by giving inadequate weight to the opinions of Plaintiff's treating physicians. Plaintiff's third issue assigns error to the ALJ's failure to render any analysis at all under Step Two regarding Plaintiff's vertigo.

**DISCUSSION**

In her third issue, Plaintiff contends that the ALJ erred at Step Two by failing to evaluate the medical severity of Plaintiff's vertigo. As stated above, following the sequential evaluation process, after making a Step Two determination about the medical severity of one or more impairments, the ALJ proceeds to Step Three where the claimant's impairments are compared to those listed in appendix 1 to subpart P of part 404. If the claimant is unable to bear the burden of showing that her impairments meet or equal an impairment in the listing, the ALJ assesses and formulates the claimant's RFC and proceeds to Step Four. Because the court finds error at Step Two, warranting remand, the court does not find it necessary to address Plaintiff's arguments pertaining to the ALJ's Step Three analysis, or the arguments pertaining to the formulation of the RFC.

Plaintiff argues that the ALJ decision failed to even mention her vertigo, let alone evaluate the condition under Step Two for medical determinability and severity. Pl.'s Mot. (Doc. 19) at 10-12. Defendant does not expressly concede this assertion of fact, but does not appear to dispute it either. *See* Def.'s Mot. (Doc. 26) at 13-15. Instead, Defendant's response to this claim is two-fold. First, Defendant raises waiver as a defense, claiming that "Plaintiff never listed vertigo as an impairment in her application or in her briefs . . . [and has therefore] waived the right to address any new disabling symptoms because he (sic) did not raise it in the administrative proceedings."

1    (*Id*. at 13). Second, Defendant argues that Plaintiff's vertigo is somehow retrospectively non-
2    severe. (*Id*. at 13-14). Plaintiff replies to the effect that vertigo was indeed raised as an impairment
3    before the ALJ, and that in any event, "the medical record is replete with references [thereto]."
4    Pl.'s Resp. (Doc. 32) at 4-5.

5    The court has carefully reviewed the ALJ's decision and finds that the ALJ failed to
6    mention or analyze Plaintiff's vertigo at Step Two. (*See* AR at 48-49). Indeed, a close reading of
7    the entirety of the ALJ's decision yields no instance in which the word vertigo is used. (*See* AR at
8    46-60). In the course of explaining the RFC (which included occasional climbing, balancing,
9    stooping, kneeling, crouching, and crawling), the ALJ made an effort to summarize Plaintiff's
10   medical records (*see* AR at 51-58); in the course of which, the ALJ made a single reference to the
11   fact that in June of 2013, Plaintiff was treated at the emergency room at Redwood Memorial
12   Hospital for "complaints of dizziness." (AR at 52). Thus, the court finds that the ALJ did not
13   consider Plaintiff's vertigo at Step Two or beyond.

14   Turning to Defendant's waiver defense, the Commissioner claims that Plaintiff waived the
15   right to assert the error in this court due to the notion that "Plaintiff never listed vertigo as an
16   impairment in her application or in her briefs." Def.'s Mot. (Doc. 26) at 13. Defendant cites
17   several cases in support of the contention that Plaintiff waived the right to challenge the ALJ's
18   failure to consider vertigo at Step Two by not raising the issue properly. The first of those cases is
19   the decision in *Harshaw v. Colvin*, 616 F. Appx. 316, 316 (9th Cir. 2015). There, the court found
20   that the appellant had waived a Step Two issue by raising it for the first time before the district
21   court, and that the existence of some evidence in the medical records regarding those conditions
22   was not sufficient to have put the ALJ and the Appeals Council on notice that that the conditions
23   constituted impairments. *Id*. at 116.

24   Defendant also relies on *Meanel v. Apfel*, 172 F.3d 1111, 1114-1115 (9th Cir. 1999), for a
25   finding of waiver in this case. In *Meanel*, a vocational expert found that a particular job existed in
26   particular numbers in the national economy, and the appellant produced new and contradictory
27   statistics in district court that she admittedly failed to raise at both her hearing before the ALJ and
28   to the Appeals Council. *Id*. at 1115. Thus, *Meanel* held that litigants must raise issues at their

6

administrative hearings in order to preserve them for federal court review. *Id*. However, *Meanel* was called into question when the Supreme Court subsequently held that a "judicially created issue-exhaustion requirement is inappropriate" in Social Security cases because the reasons for applying this requirement are much weaker in these types of cases. *Sims v. Apfel*, 530 U.S. 103, 112 (2000) ("Claimants who exhaust administrative remedies need not also exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues."). Thus, since *Sims*, some appellate courts have held that claimants "need not preserve issues in proceedings before the Commissioner or her delegates." *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (reversing ALJ's decision on basis of apparent DOT conflict even though claimant did not raise the issue until the district court proceeding that commenced two years after the ALJ hearing) (citing *Sims*, 530 U.S. at 112).

Recently, the Court of Appeals for the Ninth Circuit reconciled its decision in *Meanel* (claimants must raise all issues at administrative hearings to preserve them for appeal) with the Supreme Court's decision in *Sims* (claimants need not exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues). In *Shaibi v. Berryhill*, 870 F.3d 874, 882 (9th Cir. 2017), the court found that the *Meanel* waiver doctrine could still be applied to issues not raised during proceedings before an ALJ or the Appeals Council, specifically, where the claimant did not show good cause for a failure to challenge a vocational expert's job numbers during the hearing, and where there was no indication that the ALJ was required to inquire *sua sponte* into the foundation for that opinion on job numbers. *Id*.

The instant case is distinguishable from those relied upon by the Commissioner primarily because, as Plaintiff notes, the issue of her vertigo was in fact raised sufficiently to put the ALJ on notice that vertigo was a medically determined condition from which she suffered. As mentioned above, Plaintiff's pre-hearing brief before the ALJ clearly identified and listed a diagnostic history of her various impairments, while also making specific references to associated medical records. (*See generally* AR at 344-46). In her pre-hearing brief, Plaintiff specifically and explicitly noted that her history of dizziness had been diagnosed as vertigo in July of 2011, and that she had sought treatment again for it in November of 2014. (*Id*.). The court finds that Plaintiff sufficiently raised

7

the issue of vertigo in her pre-hearing briefing to the ALJ in order to trigger an analysis under Step Two, and at subsequent steps if necessary. Thus, because the issue of vertigo was specifically raised in Plaintiff's briefing to the ALJ, the court finds no merit in the Commissioner's assertion of waiver.

Defendant's second defense of the ALJ's failure to consider Plaintiff's vertigo at Step Two appears to be a contention that, in any event, Plaintiff's vertigo retrospectively is not severe. (Doc. 26 at 13-14). This argument is likewise without merit because it essentially asks this court to substitute its own judgment and analysis for that which was never rendered by the ALJ. Furthermore, the Commissioner's request cannot be reconciled with binding precedent requiring the ALJ to fulfill a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered, "even when the claimant is represented by counsel." *See Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983); *see also Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003); *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001); and, *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996).

"An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.' S.S.R. No. 96–3(p) (1996)." *Webb*, 433 F.3d at 686. "An impairment or combination of impairments may be found not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Id.* (internal citation omitted) (emphasis in original). Step Two then, is "a *de minimis* screening device [used] to dispose of groundless claims." *Id.* at 687 (internal quotation omitted).

As mentioned above, because the ALJ decision made no mention whatsoever of Plaintiff's above-described vertigo in its Step Two analysis, it can only be said that this impairment was not considered at all. The court, therefore, finds that the ALJ's failure to discuss the evidence of vertigo in making the Step Two determination was reversible error. This is so even if the Commissioner is correct in asserting that the condition is retrospectively non-severe, which is by no means a sound conclusion. However, even a non-severe, though medically determined, condition would have needed to be factored into the ALJ's Step Three analysis, as well as in the

8

formulation of the RFC. *See Richard v. Colvin*, No. C13-6055 RBL, 2015 WL 2085610, at *4 (W.D. Wash. May 5, 2015) ("[Thus,] [t]he ALJ's failure to address plaintiff's [vertigo] at Step Two indicates that the ALJ may not have accounted for all of plaintiff's impairments during subsequent steps of the sequential evaluation process."). The court finds, therefore, that it cannot resolve the additional issues raised by Plaintiff until the error in the ALJ's Step Two analysis is corrected. *See Haverlock v. Colvin*, No. 2:12-CV-2393-DAD, 2014 WL 670202, at *5 (E.D. Cal. Feb. 20, 2014) ("In light of the remand required by the ALJ's error at Step Two, the court need not address plaintiff's remaining claims."). Accordingly, the case must be remanded for further proceedings.

## CONCLUSION

For the reasons stated above, the court GRANTS Plaintiff's motion for summary judgment, DENIES Defendant's motion for summary judgment, and REMANDS this matter for further proceedings in accordance with this Order.

A separate judgment will issue.

**IT IS SO ORDERED.**

Dated: February 14, 2018

ROBERT M ILLMAN
United States Magistrate Judge